1  BRAD D. KRASNOFF (State Bar No. 125065)
   *bkrasnoff@DanningGill.com*
2  ERIC P. ISRAEL (State Bar No. 132426)
   *eisrael@DanningGill.com*
3  MICHAEL G. D'ALBA (State Bar No. 264403)
   *mdalba@DanningGill.com*
4  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
5  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  Attorneys for Plaintiff Jerry Namba,
   Chapter 7 Trustee

8

9                    **UNITED STATES BANKRUPTCY COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11                        **NORTHERN DIVISION**

12  In re                               | Case No. 9:23-bk-10601-RC

13  AMPERSAND PUBLISHING, LLC dba        | Chapter 7
    SANTA BARBARA NEWS-PRESS,
14                                       | Adv. No.
              Debtor.
15

16  JERRY NAMBA, Chapter 7 Trustee,      | **TRUSTEE'S COMPLAINT TO AVOID
                                         AND RECOVER VOIDABLE
17            Plaintiff,                  TRANSFERS; FOR DECLARATORY
                                         RELIEF; FOR TURNOVER; FOR
18         vs.                            RESULTING TRUST; FOR INJUNCTIVE
                                         RELIEF; FOR CONSTRUCTIVE TRUST**
19  715 ANACAPA, LLC, a California limited
    liability company; and 725 KELLOGG, LLC,  | Date:     See Summons
20  a California limited liability company,    | Time:     See Summons
                                               | Place:    See Summons
21            Defendants.

22

23        Plaintiff Jerry Namba, solely in his capacity as the Chapter 7 trustee (the "Trustee" or the

24  "Plaintiff") of the bankruptcy estate of Ampersand Publishing, LLC dba Santa Barbara News-Press

25  (the "Debtor"), alleges as follows:

26

27

28

    1741391.7  27196                              1

## JURISDICTION AND CASE BACKGROUND

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This action is commenced pursuant to 11 U.S.C. §§ 542, 544, 28 U.S.C. § 2201(a), and other applicable law.  This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).  This action arises in a case under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") entitled *In re Ampersand Publishing, LLC dba Santa Barbara News-Press*, which has been assigned bankruptcy case number 9:23-bk-10601-RC and is pending in the United States Bankruptcy Court, Central District of California, Northern Division (the "Bankruptcy Case").  Plaintiff consents to the entry in this action of final orders and judgments by the Bankruptcy Court.

2.    On or about July 21, 2023 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

3.    On or about the Petition Date, the Trustee accepted appointment as the Chapter 7 trustee for the Debtor's bankruptcy estate and continues to serve in that capacity for the benefit of creditors.

## THE PARTIES

4.    Plaintiff brings this action solely in his capacity as the Chapter 7 trustee for the Debtor's bankruptcy estate.

5.    Defendant 715 Anacapa, LLC ("Anacapa LLC"), is a limited liability company organized under the laws of the State of California.

6.    Defendant 725 Kellogg, LLC ("Kellogg LLC"), is a limited liability company organized under the laws of the State of California.

## GENERAL ALLEGATIONS

7.    Wendy McCaw ("McCaw") is an individual who resides in the County of Santa Barbara, State of California.

8.      Plaintiff is informed and believes, and based thereon alleges, that McCaw is the sole owner of Anacapa LLC.

9.      Plaintiff is informed and believes, and based thereon alleges, that McCaw is the sole owner of Kellogg LLC.

10.     The Debtor is organized as a limited liability company under the laws of the State of Delaware.

11.     McCaw is and at all times relevant to this Complaint was the Managing Member of the Debtor and the sole owner of the Debtor.

The Debtor's Purchase of 715 Anacapa Street and 725 South Kellogg Avenue

12.     On or about July 7, 2000, the Debtor entered into an Asset Purchase Agreement (the "Purchase Agreement") with NYT Santa Barbara News-Press, Inc. ("NYT").

13.     The Purchase Agreement states that the total amount paid for the assets that were the subject of the Purchase Agreement was $120,000,000.00.

14.     The Debtor used the assets that it purchased under the Purchase Agreement to run a daily newspaper in the city of Santa Barbara, California.

15.     Pursuant to the Purchase Agreement, among other things, the Debtor purchased from NYT the real property commonly known as 715 Anacapa Street and/or 718 Anacapa Street, Santa Barbara, California (the "Office Building"), and 725 Kellogg Avenue or 725 South Kellogg Avenue, Goleta, California (the "Plant").

16.     By a grant deed recorded in Santa Barbara County on or about October 19, 2000,  as instrument no. 2000-0064136, NYT transferred title to the Office Building to the Debtor.

17.     Plaintiff is informed and believes, and based thereon alleges, that by a grant deed recorded in Santa Barbara County on or about October 19, 2000, NYT transferred title to the Plant to the Debtor.

18.     After the Purchase Agreement, the Debtor operated from the Office Building and the Plant.

The Debtor's Dispute with the Managing Editor Leads to a Levy on the Office Building

19.    Starting in or about July 2006, an employment dispute arose between the Debtor and Jerry Roberts ("Roberts"), who was the managing editor of the Debtor's newspaper (the "Roberts Dispute").

20.    The Roberts Dispute was the subject of arbitration, a Santa Barbara Superior Court case (no. 1304805), and a Court of Appeal case (Second Appellate District case no. B223467).

21.    On or about February 22, 2012, the Court of Appeal affirmed a determination that Roberts had been the prevailing party in arbitration as well as the award to Roberts of $629,643.63 in attorney's fees and $93,320 in costs.

22.    Roberts was required to use enforcement procedures to collect the amounts owed to him by the Debtor, and such efforts were commenced during the summer of 2012.

23.    During the summer of 2012, Roberts obtained a writ of execution as to the Debtor and levied against the Office Building to attempt to collect the amounts that the Debtor owed him.

24.    In or about October of 2012, Roberts was paid approximately $1,000,000, representing the full amount he was owed by the Debtor.

25.    Plaintiff is informed and believes, and based thereon alleges, that the existence of the Office Building as an asset of the Debtor on which Roberts could levy and the risk that the Office Building could be lost to collection procedures is what caused the payment to Roberts of the amounts that the Debtor owed to Roberts in the Roberts Dispute.

The Debtor's Disputes with the National Labor Relations Board

26.    On or about August 16, 2007, the National Labor Relations Board (the "NLRB") certified a labor union to represent employees in the Debtor's newsroom (the "Union").

27.    On or about November 27, 2007, the Union filed with the NLRB an initial charge against the Debtor in which the Union alleged, among other things, that the Debtor had failed and refused to bargain in good faith.  The charge was designated Case 31-CA-028589 and was consolidated with other cases filed against the Debtor (the "NLRB Proceeding").

28.	From about May 2009 through about August 2009, a 21-day trial in the NLRB Proceeding was conducted before Administrative Law Judge Clifford H. Anderson.

29.	On or about May 28, 2010, Judge Anderson issued a decision in which he found, among other things, that the Debtor had engaged in unfair labor practices by, among other acts and/or omissions, bargaining in bad faith with the Union (the "Anderson Decision").

30.	The Anderson Decision required the Debtor, among other things, to cease and desist from violating labor law, pay make whole damages, and bargain with the Union in good faith.  At least 40 individuals who belonged to the bargaining unit, and possibly more, were entitled to make whole damages.  Without naming each such individual, they include by way of example Thomas DeWalt, Victoria Harvey, Steve Tonneson, Angel Pacheco, James Cheng, Marilyn McMahon, and Kathy Schultz.

31.	"Exceptions" and "Cross-Exceptions" to the Anderson Decision were filed by the Debtor, the Union, and the NLRB's General Counsel (the "Anderson Appeal").

32.	The  Anderson Appeal was delegated to a three-member panel of the NLRB that was comprised of the NLRB's Chairman and two members.

33.	On or about September 27, 2012, the three-member panel issued a Decision and Order in the Anderson Appeal (the "Panel Decision").  The Panel Decision agreed with Judge Anderson's determinations that the Debtor had violated labor law, that a broad cease and desist order was warranted, and that the Union was entitled to reimbursement of bargaining expenses from the Debtor.  The Panel Decision also extended the certification period of the Union by 12 months.

34.	The Debtor filed a motion for reconsideration of the Panel Decision.  On or about May 31, 2013, the NLRB issued an order denying the Debtor's motion for reconsideration (the "Reconsideration Denial").

35.	On or about November 14, 2012, the Debtor filed a petition with the United States Court of Appeals for the District of Columbia Circuit (the "DC Circuit") by which it sought review of the Panel Decision (the "First Appeal").

36.     At the time the NLRB issued the Panel Decision and the Reconsideration Denial, the appointment of two of the members of the NLRB had been challenged on constitutional grounds.

37.     On or about June 26, 2014, the United States Supreme Court in *NLRB v. Canning*, 134 S.Ct. 2550 (2014), held that the appointment of two members to NLRB had been invalid for constitutional reasons.

38.     On or about June 26, 2014, the NLRB's Office of Public Affairs issued a news release stating that the NLRB was "analyzing the impact that the Court's [*Canning*] decision has on [NLRB] cases in which the January 2012 recess [member] appointees participated."

39.     On or about June 27, 2014, the NLRB issued an order in the NLRB Proceeding setting aside the Panel Decision and the Reconsideration Denial, citing *Canning*.

40.     On or about August 11, 2014, the NLRB filed a motion to dismiss the First Appeal because the Panel Decision and Reconsideration Denial had been set aside.  Such motion was granted by an order entered on or about August 11, 2014 and the First Appeal was dismissed.

41.     Even though the NLRB set aside the Panel Decision and Reconsideration Denial by its order of June 27, 2014, the order also stated that the NLRB "will retain this case on its docket and take further action as appropriate."  Such order was served upon the Debtor's director of news operations by certified and regular mail.

42.     Following *Canning*, another three-member panel of the NLRB ultimately affirmed the Anderson Decision and agreed with the Reconsideration Denial, by a Decision and Order entered on March 17, 2015.  The Debtor again petitioned for review in the United States Court of Appeals for the District of Columbia Circuit (the "Second Appeal").  On or about March 3, 2017, the DC Circuit issued an opinion denying the Second Appeal.

43.     On or about September 14, 2023, the NLRB filed a proof of claim in the Debtor's bankruptcy case as an unsecured claim in the amount of $3,602,579.00.  The supporting documents to the claim include, among other documents, the Decision and Order of the three-member NLRB panel in the NLRB Proceeding that was entered on or about March 17, 2015.

The Debtor's Transfer of the Office Building and the Plant

44.    When the NLRB declared that it would keep the NLRB Proceeding on its docket in the wake of *Canning*, the Debtor knew that were the NLRB to obtain a monetary judgment against the Debtor it might levy against the Office Building and any other property belonging to the Debtor to satisfy a resulting judgment.

45.    On or about August 7, 2014, Articles of Organization for Anacapa LLC were filed with the California Secretary of State .

46.    The Articles of Organization for Anacapa LLC describe the business or services of Anacapa LLC as "investments."

47.    By a grant deed recorded in Santa Barbara County on or about September 26, 2014, as Instrument No. 2014-0043994, the Debtor transferred the Office Building to Anacapa LLC (the "Office Building Transfer").

48.    McCaw signed the grant deed for the Office Building Transfer as the chief executive officer of the sole member of the Debtor.

49.    The grant deed for the Office Building Transfer states that the transaction was exempt from the documentary transfer tax "pursuant to [Revenue] & [Taxation] Code 11925(d)," a statute that provides that "[n]o levy shall be imposed . . . by reason of any transfer . . . between legal entities that results solely in a change in the method of holding title to the realty and in which proportional ownership interests in the realty . . . represented by . . .  membership interest . . . or otherwise, directly or indirectly, remain the same immediately after the transfer."

50.    Plaintiff is informed and believes, and based thereon alleges, that the Debtor received no consideration in exchange for the Office Building Transfer.

51.    Also, on or about August 7, 2014, Articles of Organization for Kellogg LLC were filed with the California Secretary of State.

52.    The Articles of Organization for Kellogg LLC describe the business or services of Kellogg LLC as "investments."

53.     By a grant deed recorded in Santa Barbara County on or about September 26, 2014, as Instrument No. 2014-0043995, the Debtor transferred the Plant to Kellogg LLC for no consideration (the "Plant Transfer").

54.     McCaw signed the grant deed for the Plant Transfer as the chief executive officer of the sole member of the Debtor.

55.     The grant deed for the Plant Transfer states that the transaction was exempt from the documentary transfer tax "pursuant to [Revenue] & [Taxation] Code 11925(d)," a statute that provides that "[n]o levy shall be imposed . . . by reason of any transfer . . . between legal entities that results solely in a change in the method of holding title to the realty and in which proportional ownership interests in the realty . . . represented by . . .  membership interest . . . or otherwise, directly or indirectly, remain the same immediately after the transfer."

56.     Plaintiff is informed and believes, and based thereon alleges, that the Debtor received no consideration in exchange for the Plant Transfer.

Tax Liabilities of the Debtor

57.     The basis for the proof of claim the NLRB filed in the Bankruptcy Case (the "NLRB Claim") is, without limitation, the make whole damages owed to members of the Union who were the subject of the Anderson Decision.  In that regard, the NLRB Claim identifies in Exhibit 7(f) the following individuals, among others, who were members of the Union and the subject of the Anderson Decision as noted, above:  DeWalt, Harvey, Tonneson, Pacheco, Cheng, McMahon, and Schultz.

58.     The declaration filed with the NLRB Claim states that the amounts are to be paid, "minus tax withholdings on the backpay as required by Federal and State laws."

59.     Given the content of the NLRB Claim, Plaintiff is informed and believes, and based thereon alleges, that the Debtor is liable to the Internal Revenue Service (the "IRS") for wage withholding taxes for the backpay owed to the Union members who are the subject of the Anderson Decision.

60.    The Debtor was liable to the IRS for wage withholding taxes as of the Office Building Transfer and the Plant Transfer in 2014, and such taxes remained unpaid as of the Petition Date.

61.    Also, the claims register in the Bankruptcy Case includes proofs of claim that were assigned nos. 1 through 24, and 40.  Such claims are priority wage claims of former employees of the Debtor, and the aggregate amount of such claims is $134,387.19.  In addition to the taxes that the Debtor owed to the IRS as of the Office Building Transfer and the Plant Transfer, the Debtor is liable to the IRS for tax withholdings in connection with the filed priority wage claims.

62.    Moreover, the IRS issued a notice dated August 28, 2023, regarding the tax period that ended on December 31, 2022, stating that taxes were owed.  The employer ID number on such notice was 77-0547893, which is the same number set forth on the Debtor's voluntary petition for relief filed on the Petition Date.

63.    Plaintiff is informed and believes, and based thereon alleges, that the Office Building Transfer and the Plant Transfer (collectively, the "Subject Transfers") were voidable under applicable law by the IRS before the Petition Date.  Plaintiff is permitted by Section 544(b) of the Bankruptcy Code to stand in the shoes of the IRS and to exercise what rights the IRS may have to avoid and recover the Subject Transfers under applicable law.

64.    For the foregoing reasons, Plaintiff is informed and believes, and based thereon alleges, that during all periods relevant to this action the Debtor owed money to the IRS, which was and is a creditor of the bankruptcy estate because, among other reasons, it was determined that the Debtor owed money to former employees due to the Debtor's violation of labor law, and federal and state taxes were owed in connection with such moneys.

## ALLEGATIONS RELEVANT TO ACTUAL INTENT

65.    The signature on the grant deed for the Office Building Transfer came from McCaw in her capacity as the chief executive officer of Ampersand Holdings, LLC, which was described as being the sole member of the Debtor.

66.    The Articles of Organization for Anacapa LLC describe it as a one manager limited liability company and state its address as 1301 Santa Barbara Street, Santa Barbara, California.

67.    On or about February 27, 2017, a Statement of Information for Anacapa LLC was filed with the California Secretary of State that identified Ampersand Holdings, LLC, as the manager of Anacapa LLC.

68.    The signature on the grant deed for the Plant Transfer came from McCaw in her capacity as the chief executive officer of Ampersand Holdings, LLC, which was described as being the sole member of the Debtor.

69.    The Articles of Organization for Kellogg LLC describe it as a one manager limited liability company and state its address as 1301 Santa Barbara Street, Santa Barbara, California.

70.    On or about February 27, 2017, a Statement of Information for Kellogg LLC was filed with the California Secretary of State that identified Ampersand Holdings, LLC, as the manager of Kellogg LLC.

71.    On or about July 24, 2000, the Debtor filed a Limited Liability Company Application for Registration with the California Secretary of State that identified its address as 1301 Santa Barbara Street, Santa Barbara, California.

72.    Plaintiff is informed and believes, and based thereon alleges, that Anacapa LLC and Kellogg LLC are "insiders" of the Debtor, as such term is defined in 11 U.S.C. § 101(31).

73.    After the Office Building Transfer and the Plant Transfer, the Debtor continued to operate from the Office Building and the Plant, suggesting that the Subject Transfers were a sham.

74.    On the sole occasion when the Trustee was able to inspect the Plant, the Trustee found a notice from the IRS dated August 28, 2023, directed to "Santa Barbara News-Press," which is the dba of the Debtor, at the address of the Plant.

75.     The Debtor's voluntary petition for relief identifies its principal place of business as the Plant.

76.     The attachments to proof of claim no. 33 include invoices of the Inland Empire Paper Company issued to the Debtor for the shipment of materials to the Plant.

77.     The attachments to proof of claim no. 26 include property tax statements and lien certificates indicating that the Debtor was responsible for paying real property taxes owed to Santa Barbara County as to the Plant and Office Building.

78.     The attachments to proof of claim no. 37 include invoices from the Cintas Corporation to the Debtor indicating that Cintas was shipping uniform shirts and work pants to the Plant.

79.     The attachments to proof of claim no. 47 include invoices from the Band-It Rubber Company, Inc. indicating that rubber bands sold to the Debtor were shipped to the Office Building.

80.     The Statement of Financial Affairs that the Debtor filed on or about August 3, 2023, identified the Office Building in response to the requirement that the Debtor list all previous addresses used by the Debtor within the three years before the Petition Date.

81.     Plaintiff is informed and believes, and based thereon alleges that after the Office Building Transfer the Debtor rented space in the Office Building to third parties in exchange for the payment of money.

82.     At the time of the Office Building Transfer and the Plant Transfer, the NLRB Proceeding remained pending against the Debtor and adverse liability determinations had already been made against the Debtor in the NLRB Proceeding even if they were temporarily vacated as a result of *Canning*.

## THE TRUSTEE MAY AVOID TRANSFERS THAT ARE VOIDABLE
## UNDER APPLICABLE LAW BY AN ACTUAL CREDITOR

83.     Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee may avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code.

84.     Plaintiff is informed and believes, and based thereon alleges, that the IRS is a creditor holding an allowable unsecured claim within the meaning of Section 544(b).

85.     The applicable law that the IRS may use when the IRS seeks to avoid a transfer includes, without limitation, state statutes as to voidable transfers and fraudulent conveyances, Title 26 of the United States Code, and the Federal Debt Collection Procedures Act set forth in Title 28 of the United States Code.

86.     The IRS may obtain amounts owed by taxpayers by pursuing those to whom such taxpayers have transferred such taxpayers' property, i.e., the IRS may pursue transferees of property from taxpayers who owe money to the IRS.

87.     In pursuing transferees of taxpayers who owe money to the IRS, the IRS may use, without limitation, state statutes as to voidable transfers and fraudulent conveyances ("State Avoidance Laws").

88.     In pursuing transferees of taxpayers under State Avoidance Laws, the IRS is not required to complete an assessment of taxes against such transferees pursuant to 26 U.S.C. § 6901. Rather, the IRS may directly sue transferees of taxpayers without first having to make such an assessment.  The authority for the IRS to bring such an immediate action against a transferee is granted by, among other sources of legal authority, 26 U.S.C. § 7402.

89.     When the IRS brings a direct suit against the transferee of a taxpayer under State Avoidance Laws, the IRS is subject to the limitations period set forth in 26 U.S.C. § 6502, which is ten years.

90.      When the IRS brings a direct suit against the transferee of a taxpayer under State Avoidance Laws, the IRS is exercising the sovereign powers of the United States in the IRS' role

1  as an agency of the United States and is therefore not subject to provisions in State Avoidance

2  Laws that would otherwise extinguish the claims of creditors based upon the passage of time.

3      91.    When a bankruptcy trustee "steps into the shoes" of the IRS in bringing an

4  avoidance claim under section 544(b) of the Bankruptcy Code, the bankruptcy trustee – like the

5  IRS – is immune from provisions of State Avoidance Laws that would otherwise extinguish the

6  avoidance claims of creditors on timeliness grounds.

7      92.    The authority of a bankruptcy trustee to bring avoidance claims that the IRS could

8  have brought prior to the commencement of the bankruptcy case in which such bankruptcy trustee

9  serves derives from section 544(b) and not from the status of the IRS as an agency of the United

10  States.

11     93.    The Debtor owed taxes to the IRS as of the Subject Transfers that the IRS could

12  have collected after the Subject Transfers by pursuing the transferees of the Subject Transfers, i.e.,

13  Anacapa LLC and Kellogg LLC, under State Avoidance Laws.

14     94.    The Debtor owed taxes to the IRS as of the Petition Date that, in the absence of the

15  Bankruptcy Case, the IRS could have collected by pursuing the transferees of the Subject

16  Transfers, i.e., Anacapa LLC and Kellogg LLC, under State Avoidance Laws.

17     95.    There exist in the Debtor's case one or more creditors holding unsecured claims that

18  are allowable under section 502 of the Bankruptcy Code that are not allowable only under section

19  502(e) of the Bankruptcy Code, including without limitation the IRS.

20

21                    **FIRST CLAIM FOR RELIEF**

22  (To Avoid and Recover Voidable Transfers, under 11 U.S.C. § 544(b), California Civil Code
                    § 3439.04(a)(1), 26 U.S.C. §§ 6502 and 7402 )

23

24               (Against Anacapa LLC and Kellogg LLC)

25     96.    Plaintiff refers to and incorporates herein by reference each and every allegation

26  contained in Paragraphs 1 through 95, inclusive, as though fully set forth herein.

27     97.    Each of the Subject Transfers transferred an interest of the Debtor in property.

28

98.     Plaintiff is informed and believes, and based thereon alleges, that the Debtor made each of the Subject Transfers with the actual intent to hinder, delay, or defraud one or more of its creditors.

99.     Pursuant to 11 U.S.C. § 544(b) and other applicable law, Plaintiff is entitled to avoid the Subject Transfers.

100.    Other applicable law that the Trustee may invoke to avoid the Subject Transfers includes, without limitation, the Uniform Voidable Transactions Act set forth at § 3439.01, *et. seq.*, of the Civil Code of California, and those provisions of Title 26 of the United States Code that enable the IRS to obtain payment of taxes owed by taxpayers from the transferees of those taxpayers, including without limitation 26 U.S.C. §§ 7402 and 6502.

101.    Pursuant to § 550 of the Bankruptcy Code, Plaintiff may recover from Anacapa LLC and Kellogg LLC the Office Building and the Plant, respectively, or the value thereof in sums according to proof, plus interest thereon at the maximum legal rate from and after the date of the Subject Transfers.

## SECOND CLAIM FOR RELIEF

(To Avoid and Recover Voidable Transfer, under 11 U.S.C. § 544(b), California Civil Code § 3439.05(a), 26 U.S.C. §§ 6502 and 7402 )

(Against Anacapa LLC and Kellogg LLC)

102.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 95, inclusive, as though fully set forth herein.

103.    Plaintiff is informed and believes, and based thereon alleges, that the Debtor received less than reasonably equivalent value in exchange for the Subject Transfers.

104.    Plaintiff is informed and believes, and based thereon alleges, that at the time the Subject Transfers were made, the Debtor was either insolvent or became insolvent as a result of the Subject Transfers.

105.    Pursuant to 11 U.S.C. § 544(b) and other applicable law, Plaintiff is entitled to avoid the Subject Transfers.

106.    Other applicable law the Trustee may invoke to avoid the Subject Transfers includes, without limitation, the Uniform Voidable Transactions Act set forth at § 3439.01, *et. seq.*, of the Civil Code of California, and those provisions of Title 26 of the United States Code that enable the IRS to obtain payment of taxes owed by taxpayers from the transferees of those taxpayers, including without limitation 26 U.S.C. §§ 7402 and 6502.

107.    Pursuant to § 550 of the Bankruptcy Code, Plaintiff may recover from Anacapa LLC and Kellogg LLC the Office Building and the Plant, respectively, or the value thereof in sums according to proof, plus interest thereon at the maximum legal rate from and after the date of the Subject Transfers.

## THIRD CLAIM FOR RELIEF

(To Avoid and Recover Voidable Transfer, under 11 U.S.C. § 544(b), California Civil Code § 3439.04(a)(2)(a), 26 U.S.C. §§ 6502 and 7402)

(Against Anacapa LLC and Kellogg LLC)

108.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 95, inclusive, and paragraph 102, as though fully set forth herein.

109.    Plaintiff is informed and believes, and based thereon alleges, that at the time of the Subject Transfers, the Debtor was engaged, or was about to engage, in business or a transaction or transactions for which its remaining assets were an unreasonably small capital because the Debtor was operating a daily newspaper that required the employment of staff to investigate stories, write and edit content, and produce and distribute the publication.

110.    Pursuant to 11 U.S.C. § 544(b) and other applicable law, Plaintiff is entitled to avoid the Subject Transfers.

111.    Other applicable law the Trustee may invoke to avoid the Subject Transfers includes, without limitation, the Uniform Voidable Transactions Act set forth at § 3439.01, *et. seq.*, of the Civil Code of California, and those provisions of Title 26 of the United States Code that

1  enable the IRS to obtain payment of taxes owed by taxpayers from the transferees of those

2  taxpayers, including without limitation 26 U.S.C. §§ 7402 and 6502.

3      112.    Pursuant to § 550 of the Bankruptcy Code, Plaintiff may recover from Anacapa LLC

4  and Kellogg LLC the Office Building and the Plant, respectively, or the value thereof in sums

5  according to proof, plus interest thereon at the maximum legal rate from and after the date of the

6  Subject Transfers.

7

8                          **FOURTH CLAIM FOR RELIEF**

9      (To Avoid and Recover Voidable Transfers, under 11 U.S.C. § 544(b), California Civil Code
                § 3439.04(a)(2)(b), 26 U.S.C. §§ 6502 and 7402 )

10

11                      (Against Anacapa LLC and Kellogg LLC)

12      113.    Plaintiff refers to and incorporates herein by reference each and every allegation

13  contained in Paragraphs 1 through 95, inclusive, and paragraph 102, as though fully set forth

14  herein.

15      114.    Plaintiff is informed and believes, and based thereon alleges, that when it made the

16  Subject Transfers, the Debtor intended to incur, or believed or reasonably should have believed,

17  that it would incur debts that would be beyond its ability to pay as such debts matured because the

18  Debtor was operating a daily newspaper that required the employment of staff to investigate

19  stories, write and edit content, and produce and distribute the publication.

20      115.    Pursuant to 11 U.S.C. § 544(b) and other applicable law, Plaintiff is entitled to avoid

21  the Subject Transfers.

22      116.    Other applicable law the Trustee may invoke to avoid the Subject Transfers

23  includes, without limitation, the Uniform Voidable Transactions Act set forth at § 3439.01, *et. seq.*,

24  of the Civil Code of California, and those provisions of Title 26 of the United States Code that

25  enable the IRS to obtain payment of taxes owed by taxpayers from the transferees of those

26  taxpayers, including without limitation 26 U.S.C. §§ 7402 and 6502.

27      117.    Pursuant to § 550 of the Bankruptcy Code, Plaintiff may recover from Anacapa LLC

28  and Kellogg LLC the Office Building and the Plant, respectively, or the value thereof in sums

1  according to proof, plus interest thereon at the maximum legal rate from and after the date of the

2  Subject Transfers.

3

4  ### FIFTH CLAIM FOR RELIEF

5  (For Declaratory Relief)

6  (Against Anacapa LLC and Kellogg LLC)

7       118.   Plaintiff refers to and incorporates herein by reference each and every allegation

8  contained in Paragraphs 1 through 95, inclusive, as though fully set forth herein.

9       119.   An actual controversy exists as between Plaintiff, on the one hand, and Anacapa

10  LLC and Kellogg LLC, on the other hand, in that the Trustee contends that the Debtor owns the

11  equitable interest in the Office Building and the Plant, and Anacapa LLC and Kellogg LLC dispute

12  that contention.

13       120.   Plaintiff is entitled to a determination by this Court that the bankruptcy estate owns

14  the fee interest in the Office Building and the Plant, respectively.

15

16  ### SIXTH CLAIM FOR RELIEF

17  (For Turnover)

18  (Against Anacapa LLC and Kellogg LLC)

19       121.   Plaintiff refers to and incorporates herein by reference each and every allegation

20  contained in Paragraphs 1 through 95, inclusive, as though fully set forth herein.

21       122.   The Office Building and the Plant are assets that the Trustee can use, sell or lease.

22  The Court should order turnover of the Office Building and the Plant to the Trustee.

23       123.   The Trustee is entitled to a judgment ordering Anacapa LLC and Kellogg LLC to

24  turn over possession of the Office Building and the Plant to the Trustee.

25

26

27

28

**SEVENTH CLAIM FOR RELIEF**

(For Resulting Trust)

(Against Anacapa LLC and Kellogg LLC)

124.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 95, inclusive, as though fully set forth herein.

125.    By the Subject Transfers, Anacapa LLC and Kellogg LLC acquired title to the Office Building and the Plant, respectively.

126.    After the Office Building Transfer, the Debtor continued to operate from the Office Building.

127.    Plaintiff is informed and believes, and based thereon alleges that after the Office Building Transfer there was no lease between the Debtor and any other entity regarding the Debtor's presence at the Office Building.

128.    Plaintiff is informed and believes, and based thereon alleges that after the Office Building Transfer the Debtor was not required to pay rent for the Office Building, and never paid any rent.

129.    After the Plant Transfer, the Debtor continued to operate from the Plant.

130.    Plaintiff is informed and believes, and based thereon alleges that after the Plant Transfer there was no lease between the Debtor and any other entity regarding the Debtor's presence at the Plant.

131.    Plaintiff is informed and believes, and based thereon alleges that after the Plant Transfer the Debtor was not required to pay rent for the Plant.

132.    After the Subject Transfers, the Debtor continued to own the beneficial interest in the Office Building and the Plant.

133.    By the Subject Transfers, the Debtor intended that Anacapa LLC and Kellogg LLC hold the Office Building and the Plant, respectively, in trust for the benefit of the Debtor.

134.    The beneficial interests in the Office Building and the Plant constitute property of the bankruptcy estate.

135. Anacapa LLC and Kellogg LLC are obligated to hold the Office Building and the Plant for the benefit of the Debtor and now the bankruptcy estate.

136. The Trustee is entitled to a decree from the Bankruptcy Court imposing a resulting trust over the Office Building and the Plant.

**EIGHTH CLAIM FOR RELIEF**

(For Injunctive Relief)

(Against Anacapa LLC, Kellogg LLC)

137. Plaintiff refers to and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 95, inclusive, as though fully set forth herein.

138. The assets of the Debtor are located at the Office Building and the Plant.

139. Anacapa LLC and Kellogg LLC, presumably at the direction of McCaw, can and do determine who can have access to the premises at the Office Building and the Plant.

140. Plaintiff is informed and believes, and based thereon alleges that certain of the assets of the Debtor that are located at the Office Building and/or the Plant are books and records, printing presses, equipment, and fixtures.

141. Anacapa LLC and Kellogg LLC have failed to provide the Trustee access to the Office Building and the Plant, as applicable.

142. The failure of Anacapa LLC and Kellogg LLC to provide the Trustee access to the Office Building and the Plant, as applicable, has prevented the Trustee from meeting his duties under the Bankruptcy Code to investigate what the assets of the bankruptcy estate may be and to reduce them to money, among other duties.

143. Anacapa LLC and Kellogg LLC in failing to provide the Trustee access to the Office Building and the Plant, as applicable, are exercising control over the property of the bankruptcy estate.

144. Plaintiff is informed and believes, and based thereon alleges that the Office Building and the Plant are in a condition that does not protect the property of the bankruptcy estate from the elements.

145.    Plaintiff is informed and believes, and based thereon alleges that Anacapa LLC and Kellogg LLC have failed to maintain the supply of electricity and/or other utilities to the Office Building and the Plant, as applicable, even though their expressed intent is to remodel the interiors of one or more of the Office Building and/or the Plant.

146.    Plaintiff is informed and believes, and based thereon alleges that Anacapa LLC and Kellogg LLC continue their wrongful conduct of exercising control over and denying the Trustee access to property of the bankruptcy estate so that the Trustee has no adequate remedy at law against them for such conduct.

147.    Plaintiff is informed and believes and, based thereon, alleges that the ongoing wrongful conduct of Anacapa LLC and Kellogg LLC is causing irreparable harm to Plaintiff by creating the risk that the value of the property of the bankruptcy estate, over which they are exercising control, may be lost or diminished.

148.    The risk of hardship to Anacapa LLC and Kellogg LLC by enjoining their ongoing wrongful conduct is much less than the risk of hardship to the Trustee and to the bankruptcy estate by the absence of such injunctive relief.

149.    Plaintiff is entitled to injunctive relief, on a preliminary and permanent basis, prohibiting Anacapa LLC and Kellogg LLC from engaging in their ongoing misconduct by, among other things, withholding keys to the Office Building and Plant, as well as directing the Defendants to immediately deliver to the Trustee all keys and information (like security passcodes) needed for the Trustee to access the Office Building and the Plant and all locked interior areas of the Office Building and the Plant, and to immediately restore electricity to the Office Building and the Plant, and preventing Anacapa LLC and Kellogg LLC from changing the locks and security passcodes pending further Court order.

## NINTH CLAIM FOR RELIEF

(For Turnover)

(Against Anacapa LLC and Kellogg LLC)

150.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 95, inclusive, as though fully set forth herein.

151.    The Office Building and the Plant contain assets that constitute property of the bankruptcy estate that the Trustee can use, sell or lease, including without limitation books and records, printing presses, equipment, and fixtures.  The Court should order turnover of the property of the bankruptcy estate that is located inside of the Office Building and the Plant to the Trustee.

## TENTH CLAIM FOR RELIEF

(To Impose Constructive Trust)

(Against Anacapa LLC and Kellogg LLC)

152.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 151, inclusive, as though fully set forth herein.

153.    The California Civil Code in section 2224 provides that "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

154.    At the time of the Subject Transfers, the Debtor was liable on claims of the NLRB in the NLRB Proceeding.

155.    Plaintiff is informed and believes, and based thereon alleges that at the time of the Subject Transfers the Debtor was liable on claims of the IRS.

156.    The purpose of the Subject Transfers was to change the form in which title to the Office Building and the Plant was held such that it would appear that the Debtor had fewer assets than it actually had.

157.    After the Subject Transfers, the Debtor continued to operate from the Office Building and the Plant as if the Subject Transfers had not occurred, revealing that the Subject Transfers were intended solely to change how the Debtor appeared "on paper."

158.    Also, the Subject Transfers were completed in violation of fiduciary duties that were owed to the Debtor by persons and entities who controlled the Debtor.

159.    Plaintiff is informed and believes, and based thereon alleges that the Debtor was damaged by the Subject Transfers because the Debtor was deprived of ownership of the Office Building and the Plant even though it continued to be responsible for expenses associated with actual ownership of the Office Building and the Plant.

160.    Anacapa LLC and Kellogg LLC now hold title to the Office Building and the Plant, respectively, as a result of changes to the manner in which title to the Office Building and the Plant was held that were improper, and breaches of fiduciary duties owed to the Debtor.

161.    Anacapa LLC and Kellogg LLC hold the Office Building and the Plant, respectively, in trust for the benefit of Plaintiff and the Court should declare that a constructive trust exists such that Plaintiff is the equitable owner of the Office Building and the Plant.

WHEREFORE, Plaintiff prays for judgment against Anacapa LLC and Kellogg LLC as follows:

**<u>ON THE FIRST THROUGH FOURTH CLAIMS FOR RELIEF:</u>**

1.    For judgment in favor of Plaintiff and against Anacapa LLC avoiding the Office Building Transfer;

2.    For judgment in favor of Plaintiff and against Kellogg LLC avoiding the Plant Transfer;

3.    Awarding the Office Building or the value thereof according to proof in favor of Plaintiff and against Anacapa LLC;

4.    Awarding the Plant or the value thereof according to proof in favor of Plaintiff and against Kellogg LLC; and

5.      For an award of interest at the legal rate on all sums awarded to Plaintiff from the date of the Subject Transfers.

**ON THE FIFTH CLAIM FOR RELIEF:**

6.      For a declaration by the Court that the bankruptcy estate owns the fee interest in the Office Building; and

7.      For a declaration by the Court that the bankruptcy estate owns the fee interest in the Plant.

**ON THE SIXTH CLAIM FOR RELIEF:**

8.      For a judgment ordering that the Trustee is entitled to possession of the Office Building and the Plant.

**ON THE SEVENTH CLAIM FOR RELIEF:**

9.      For judgment declaring that Anacapa LLC and Kellogg LLC hold title to the Office Building and the Plant, respectively, as the trustees of a resulting trust for the benefit of the bankruptcy estate.

10.     For an order compelling Anacapa LLC and Kellogg LLC to convey the Office Building and the Plant, respectively, to the Trustee.

**ON THE EIGHTH CLAIM FOR RELIEF:**

11.     Injunctive relief as against Anacapa LLC and Kellogg LLC to provide immediate access to the Office Building and the Plant so that the Trustee can carry out his duties under the Bankruptcy Code; and

12.     Injunctive relief as against Anacapa LLC and Kellogg LLC to restore utility services to the Office Building and the Plant to mitigate, and prevent, future damage to the bankruptcy estate.

**ON THE NINTH CLAIM FOR RELIEF:**

13.     For a judgment ordering that the Trustee is entitled to possession of the property of the bankruptcy estate that is located inside of the Office Building and the Plant.

**ON THE TENTH CLAIM FOR RELIEF**

14.     For judgment declaring that Anacapa LLC and Kellogg LLC hold title to the Office Building and the Plant, respectively, as trustees of a constructive trust(s) for the benefit of the bankruptcy estate.

15.     For an order compelling Anacapa LLC and Kellogg LLC to convey to Plaintiff the Office Building and the Plant, respectively.

**ON ALL CLAIMS FOR RELIEF:**

16.     For costs of suit incurred; and

17.     For such other relief as the Court deems just and proper.

DATED:  December 26, 2023                    DANNING, GILL, ISRAEL & KRASNOFF, LLP


                                             By: _____
                                                 MICHAEL G. D'ALBA
                                                 Attorneys for Plaintiff Jerry Namba,
                                                 Chapter 7 Trustee

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>JERRY NAMBA, Chapter 7 Trustee | DEFENDANTS  715 ANACAPA, LLC, a California limited liability company; 725 KELLOGG, LLC, a California limited liability company |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Danning, Gill, Israel & Krasnoff, LLP<br>1901 Avenue of the Stars, Suite 450<br>Los Angeles, CA 90067          310-277-0077 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
To Avoid and Recover Voidable Transfers, under 11 U.S.C. § 544(b), California Civil Code § 3439.04(a)(2)(b), 26 U.S.C. §§ 6502 and 7402)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- [3] 11-Recovery of money/property – §542 turnover of property
- [ ] 12-Recovery of money/property – §547 preference
- [ ] 13-Recovery of money/property – §548 fraudulent transfer
- [1] 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- [ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- [ ] 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- [ ] 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- [ ] 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- [ ] 66-Dischargeability – §523(a)(1),(14),(14A) priority tax claims
- [ ] 62-Dischargeability – §523(a)(2), false pretenses, false representation, actual fraud
- [ ] 67-Dischargeability – §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- [ ] 61-Dischargeability – §523(a)(5), domestic support
- [ ] 68-Dischargeability – §523(a)(6), willful and malicious injury
- [ ] 63-Dischargeability – §523(a)(8), student loan
- [ ] 64-Dischargeability – §523(a)(15), divorce or separation obligation (other than domestic support)
- [ ] 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- [ ] 71-Injunctive relief – imposition of stay
- [5] 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- [ ] 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- [2] 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- [ ] 01-Determination of removed claim or cause

**Other**
- [ ] SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- [ ] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ 5,000,000.00 |

Other Relief Sought
(1) to avoid and recover voidable transfer under 11 U.S.C. § 544(b) and other applicable law
(4) for imposition of resulting trust

1743883.2  27196

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR  AMPERSAND PUBLISHING, LLC dba SANTA BARBARA NEWS-PRESS | BANKRUPTCY CASE NO. 9:23-bk-10601-RC | |
| DISTRICT IN WHICH CASE IS PENDING CENTRAL DISTRICT OF CALIFORNIA | DIVISION OFFICE NORTHERN | NAME OF JUDGE RONALD A. CLIFFORD III |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)  *Michael A. D'Alba* | | |
| DATE  December 26, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)  MICHAEL G. D'ALBA | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1743883.2  27196